## UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, and NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT KUPOR, in his official capacity as Director of the Office of Personnel Management, OFFICE OF PERSONNEL MANAGEMENT, and THE UNITED STATES OF AMERICA, <br><br> Defendants. | Case No. 1:25-cv-13305-GAO <br><br><br> Leave to file granted on January 6, 2026 <br><br> [Dkt No. 59] |

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR STAY UNDER 5 U.S.C. § 705 AND FOR PRELIMINARY INJUNCTION

3894499

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ......................................2

    A.    Plaintiffs Have Standing to Bring this Action..........................................................2

    B.    This Court Has Jurisdiction over Plaintiffs' Constitutional and APA
          Claims. ......................................................................................................................6

    C.    The MHP Is Final Agency Action.........................................................................10

II.    PLAINTIFFS FACE IRREPARABLE HARM ABSENT RELIEF..................................12

III.    THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR
     RELIEF. .............................................................................................................................13

IV.    A SECTION 705 STAY AND PRELIMINARY INJUNCTION ARE REQUIRED. ........13

CERTIFICATE OF SERVICE .........................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023)...................................................................................................4

*AFGE v. Ezell*,
No. 25-cv-10276-GAO (Feb. 12, 2025)..............................................................9, 10

*AFGE v. Trump*,
139 F.4th 1020 (9th Cir. 2025) ...............................................................................7

*AFGE v. Trump*,
784 F. Supp. 3d 1316 (N.D. Cal. May 22, 2025), *aff'd*, 2025 WL 1541714 (9th
2025) ...........................................................................................................................7

*AFGE v. Trump*,
929 F.3d 748 (D.C. Cir. 2019)..................................................................................9

*AFGE v. U.S. Off. of Pers. Mgmt.*,
770 F. Supp. 3d 1215 (N.D. Cal. 2025), *appeal dismissed*, 2025 WL 2976744
(9th Cir. Sept. 29, 2025).............................................................................................6

*AFGE v. U.S. Off. of Pers. Mgmt.*,
771 F. Supp. 3d 1127 (N.D. Cal. 2025) ...................................................................7

*AFGE v. U.S. Off. of Pers. Mgmt.*,
781 F. Supp. 3d 920 (N.D. Cal. 2025) ..........................................................6, 7, 17

*Am. Ass'n of Univ. Profs. v. Rubio*,
780 F. Supp. 3d 350 (D. Mass. 2025) ...................................................................4, 5

*Am. Public Health Ass'n v. Nat'l Insts. of Health*,
791 F. Supp. 3d 119 (D. Mass. 2025) .....................................................................11

*Ass'n of Am. Univs. v. Dep't of Def.*,
792 F. Supp. 3d 143 (D. Mass. 2025) .....................................................................14

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
598 U.S. 175 (2023)...............................................................................................9, 10

*Bldg. & Constr. Trades Council of Buffalo, N.Y. & Vicinity v. Downtown Dev.,
Inc.*,
448 F.3d 138 (2d Cir. 2006)......................................................................................4

ii

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
    370 F.3d 151 (1st Cir. 2004)..................................................................................12

*Chicago Women in Trades v. Trump*,
    2025 WL 3034056 (N.D. Ill. Oct. 30, 2025).........................................................14

*City of Chicago v. U.S. Dep't of Homeland Sec.*,
    2025 WL 3171302 (N.D. Ill. Nov. 13, 2025) ........................................................14

*City of Columbus v. Kennedy*,
    __ F. Supp. 3d __, 2025 WL 2426382 (D. Md. Aug. 22, 2025)............................14

*City of Lakewood v. Plain Dealer Publishing Co.*,
    486 U.S. 750 (1988)..........................................................................................5, 6

*Doctors for America v. OPM*,
    793 F. Supp. 3d 112 (D.D.C. 2025) .....................................................................11

*Doe v. Trump*,
    157 F.4th 36 (1st Cir. 2025)...........................................................................14, 15

*Elev8 Baltimore, Inc. v. Corp. for Nat'l & Cmty. Serv.*,
    2025 WL 1865971 (D. Md. July 7, 2025)...............................................................7

*Filebark v. U.S. Dep't of Transp.*,
    555 F.3d 1009 (D.C. Cir. 2009) .............................................................................8

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    110 F.4th 295 (1st Cir. 2024).................................................................................2

*Fornaro v. James*,
    416 F.3d 63 (D.C. Cir. 2005).................................................................................8

*Hawkins v. Boone*,
    786 F. Supp. 2d 328 (D.D.C. 2011) ......................................................................4

*Los Angeles Press Club v. Noem*,
    2025 WL 2658327 (C.D. Cal. Sept. 10, 2025) ......................................................4

*Make the Road N.Y. v. Noem*,
    2025 U.S. App. LEXIS 31160 (D.C. Cir. Nov. 22, 2025).....................................14

*N.H. Indonesian Cmty. Support v. Trump*,
    157 F.4th 29 (1st Cir. 2025)..................................................................................15

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958)..............................................................................................15

iii

*Nat'l Educ. Ass'n-N.H. v. NH Att'y Gen.*,
    2025 WL 2807652 (D.N.H. Oct. 2, 2025) ............................................................................4

*New York v. Kennedy*,
    155 F.4th 67 (1st Cir. 2025) ...........................................................................................7

*New York v. Trump*,
    769 F. Supp. 3d 119 (D.R.I. 2025) ...............................................................................11

*Off. of Pers. Mgmt. v. AFGE*,
    145 S. Ct. 1914 (2025) ...................................................................................................6

*Pharm. Care Mgmt. Ass'n v. Rowe*,
    429 F.3d 294 (1st Cir. 2005) ...........................................................................................3

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
    592 U.S. 14 (2020) .......................................................................................................12

*Sindicato Puertorriqueño de Trabajadores v. Fortuño*,
    699 F.3d 1 (1st Cir. 2012) .............................................................................................12

*Somerville Pub. Sch. v. McMahon*,
    139 F.4th 63 (1st Cir. 2025) *administratively stayed sub. nom.*, *McMahon v.*
    *New York*, 125 S. Ct. 2643 (2025) ...............................................................................7

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .....................................................................................................15

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .......................................................................................................5

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) ...............................................................................................13, 14

*Turner v. U.S. Agency for Glob. Media*,
    502 F. Supp. 3d 333 (D.D.C. 2020) ...............................................................................8

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016) .....................................................................................................10

*U.S. DOJ Fed. Bureau of Prisons Fed. Med. Ctr.*,
    70 F.L.R.A. 890 (Sept. 28, 2018) ...................................................................................9

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
    517 U.S. 544 (1996) .......................................................................................................3

*United States v. Nat'l Treasury Emps. Union*,
    513 U.S. 454 (1995) .......................................................................................................8

iv

*Weaver v. U.S. Info. Agency*,
    87 F.3d 1429 (D.C. Cir. 1996) ........................................................................8

*West Virginia v. Barnette*,
    319 U.S. 624 (1943) (Murphy, J., concurring) ...........................................4

*Wreal, LLC v. Amazon.com, Inc.*,
    840 F.3d 1244 (11th Cir. 2016) ..................................................................12

**Statutes**

5 U.S.C. § 2302 ..................................................................................................8

5 U.S.C. § 7103 ...............................................................................................8, 9

Administrative Procedure Act ................................................................ *passim*

Civil Service Reform Act ...........................................................................7, 8, 10

**Other Authorities**

13A Fed. Prac. & Proc. Juris. § 3531.9.5, Org. Standing (3d ed.)....................4

## INTRODUCTION

Defendants' 30-page Opposition (Dkt. No. 57, "Opp.") does not even attempt to defend the constitutionality of requiring applicants for federal jobs to explain how one of the President's Executive Orders is personally significant to them. As detailed in declarations from Plaintiffs' members, that question, the Loyalty Question, has both compelled protected speech and chilled others from speaking entirely. The Loyalty Question violates the First Amendment—a point the Defendants never address, much less refute. Likewise, the Opposition does not address Plaintiffs' argument that the Merit Hiring Plan ("MHP") that initiated the Loyalty Question is arbitrary and capricious, in violation of the Administrative Procedure Act ("APA"). Defendants effectively concede the merits of this motion. Instead, Defendants argue that this court cannot remedy these obvious First Amendment and APA violations because Plaintiffs lack standing and this court lacks jurisdiction over the claims. That is flat wrong. Defendants assert (falsely) that Plaintiffs are challenging individual employment actions associated with specific agency job postings. In fact, Plaintiffs challenge a government-wide policy—directed by OPM—that violates their members' First Amendment rights. Plaintiffs have associational standing to assert these claims on their members' behalf, and this court has jurisdiction over the constitutional and APA claims Plaintiffs actually brought, as multiple courts have recently confirmed.

Defendants' remaining arguments—that OPM's directive is not final agency action, that Plaintiffs' First Amendment injuries do not create irreparable harm, and that relief should be limited to those of Plaintiffs' members that Plaintiffs identify to the government—similarly fail. As to final agency action, the MHP indisputably dictates that the Loyalty Question appear on federal job postings—and it is this government-wide policy, not any individual agency job posting, that Plaintiffs are challenging. As to irreparable harm, Defendants ignore binding

1

Supreme Court precedent that the loss of First Amendment freedoms constitutes irreparable

harm. Finally, on the question of appropriate relief, the primary relief sought by Plaintiffs—a

stay of the MHP pursuant to the APA, 5 U.S.C. § 705—is relief the Court expressly may issue

post-*CASA*. And the need for a remedy that affords Plaintiffs "complete relief" warrants an

injunction against the Loyalty Question entirely. Defendants, remarkably, argue that Plaintiffs

can obtain relief only by publicly identifying their union members—but this approach would

itself impinge on Plaintiffs' members' First Amendment rights and inflict on Plaintiffs the same

harm that this litigation seeks to remedy. The Court should issue a Section 705 stay and a

preliminary injunction vacating the Loyalty Question.

## ARGUMENT

## I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

### A.    Plaintiffs Have Standing to Bring this Action.

Plaintiffs have clearly established, under First Circuit law, that they have standing to

assert claims on behalf of their members. Associational standing "allows an organization . . . to

sue on behalf of its members when (a) its members would otherwise have standing to sue in their

own right; (b) the interests it seeks to protect are germane to the organization's purpose; and

(c) neither the claim asserted nor the relief requested requires the participation of individual

members in the lawsuit." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 110 F.4th 295, 308 (1st Cir.

2024).[1] A member otherwise has standing to sue where she has suffered an Article III injury in

---

[1] Defendants misleadingly conflate organizational and associational standing, citing the rule for **organizational** standing to argue that Plaintiffs lack **associational** standing. *See, e.g.* Opp. at 13 (citing *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024)). Plaintiffs do not assert organizational standing here. But they plainly satisfy the standard for associational standing.

fact that is traceable to the defendant's conduct. *See United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 551, 555 (1996) (holding that labor union had associational standing to bring claims on behalf of its members).

Plaintiffs' uncontroverted declarations extensively detail the effects of the Loyalty Question on Plaintiffs' members, including how some were chilled from applying at all or from sharing their full beliefs in response to the question, and how others felt coerced into answering and providing a response that would accord with the Trump Administration's views. Mot. at 9–12; Dkt. No. 47 ¶¶ 11–12; Dkt. No. 48 ¶¶ 7–10; Dkt. No. 49 ¶¶ 8–11; Dkt. No. 50 ¶¶ 9–10; Dkt. No. 44 ¶¶ 16–18; Dkt. No. 45 ¶¶ 15–16; Dkt. No. 46 ¶¶ 15–16. The record also shows these Article III First Amendment injuries are caused by the Loyalty Question, a fact that is not rebutted. Plaintiffs' members would have standing to bring their claims, and therefore Plaintiffs have associational standing to do so. *See United Food & Com.*, 517 U.S. at 555.[2]

Plaintiffs also easily satisfy the germaneness prong. The interests furthered by this lawsuit—protecting members' First Amendment rights and upholding a merit-based civil service—are not only germane to Plaintiffs' missions, but also one of their most important values. *See* Colón Decl. (Dkt. No. 46) ¶ 3 ("AFSCME was founded by civil servants . . . united by a simple idea: that a professional civil service is essential to a strong democracy, and public service should be delivered by individuals dedicated to serving their communities, not those with connections to particular politicians."); Kelley Decl. (Dkt. No. 44) ¶¶ 7–9; Sutton Decl. (Dkt. No. 45) ¶¶ 7–9. The germaneness prong is "undemanding" and requires "only that an organization's litigation goals be pertinent to its special expertise and the grounds that bring its

---

[2] Defendants do not challenge the third element, which at any rate Plaintiffs established: their claims and the requested non-individualized equitable relief do not require members to participate. *See Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 314 (1st Cir. 2005).

membership together." *Bldg. & Constr. Trades Council of Buffalo, N.Y. & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 148 (2d Cir. 2006) (citation omitted). Courts consistently "recognize a wide range of purposes as germane to a labor union's interest in protecting members' interests." 13A Fed. Prac. & Proc. Juris. § 3531.9.5, Org. Standing (3d ed.) (collecting cases). And courts regularly find that protecting members' First Amendment rights is germane to a union's mission. *See, e.g.*, *Nat'l Educ. Ass'n-N.H. v. NH Att'y Gen.*, 2025 WL 2807652, at *9 (D.N.H. Oct. 2, 2025); *Los Angeles Press Club v. Noem*, 2025 WL 2658327, at *15 (C.D. Cal. Sept. 10, 2025); *Hawkins v. Boone*, 786 F. Supp. 2d 328, 336 (D.D.C. 2011); *cf. Am. Ass'n of Univ. Profs. v. Rubio*, 780 F. Supp. 3d 350, 376–79 (D. Mass. 2025) (finding associational standing for union based on members' First Amendment injuries without analyzing germaneness). Here, Plaintiffs protect and advocate for the rights of federal and non-federal workers, including in employment, Dkt. No. 44 ¶ 7; Dkt. No. 45 ¶ 7; Dkt. No 46 ¶ 6—exactly the interests protected by this lawsuit. The germaneness prong is met. *See Nat'l Educ. Ass'n-N.H.*, 2025 WL 2807652, at *9.

Defendants' arguments to the contrary are baseless and misleading. ***First***, Defendants assert, with no supporting case law, that Plaintiffs cannot establish First Amendment injury unless members show their responses to the Loyalty Question were ***used*** by the hiring agencies to punish them. Opp. at 10–12. That is not the law. In compelled speech cases, the First Amendment injury occurs as soon as a speaker is required or effectively compelled to speak when they prefer not to, or to speak on a topic they do not wish to address. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023); *West Virginia v. Barnette*, 319 U.S. 624, 645–46 (1943) (Murphy, J., concurring). Indeed, Defendants simply ignore Plaintiffs' evidence that the Loyalty Question has ***already injured*** their members. *See, e.g.*, Dkt. No. 47 ¶¶ 11–12; Dkt. No. 50 ¶¶ 9–10. Likewise, for chilled speech, government action is not a requirement for pre-enforcement

4

review of a challenged government policy. *See, e.g.*, *Am. Ass'n of Univ. Profs.*, 780 F. Supp. 3d at 376–78 (finding associational standing for organization where reasonable members "would self-censor in response to the challenged policy based on a credible threat of enforcement, which amounts to an objective chill"); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014); *see also* Dkt. No. 48 ¶¶ 7–10; Dkt. No. 49 ¶¶ 8–9.

The MHP's grant of black-box discretion to politically-appointed agency leaders to review and use answers to the Loyalty Question likewise injures Plaintiffs' members, including those who have not applied for positions. In *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757–59 (1988), the U.S. Supreme Court confronted a policy that, like here, gave government officials "unbridled discretion" to decide who would benefit from a government award (in that case, the grant of newsstand permits). The Supreme Court found a First Amendment violation even though the plaintiff ***did not apply*** for a permit, because of the risk of self-censorship. *Id.* at 754–59. The same is true here: the Loyalty Question grants hiring officials unbridled authority to use the answers however they wish, causing harm to members who reasonably self-censor by not applying or not stating their full beliefs in response to the question. *See* Dkt. No. 47 11–12; Dkt. No. 48 ¶¶ 7–10; Dkt. No. 49 ¶¶ 5–10; Dkt. No. 50 ¶¶ 9–10. This is enough to establish injury. *See, e.g.*, *City of Lakewood*, 486 U.S. at 754–59.

***Second***, Defendants argue that requiring candidates to describe their favorite of President Trump's Executive Orders or policies is not problematic, because OPM simultaneously informs agencies not to use the answers to discriminate or violate the law. Opp. at 11–12, 14. But an after-the-fact admonition does not immunize requiring applicants to detail their political views in the absence of a compelling government interest. Defendants' position could justify forcing federal job applicants (or Medicare beneficiaries, or veterans seeking insurance, or families

5

applying for food benefits) to speak on any number of protected First Amendment issues—who they voted for in the last presidential election, their religious faith, whether they identify as pro-life or pro-choice—so long as the government instructs the officials reviewing the answers not to use them to discriminate. But the First Amendment is not so limited; it protects the right to speak or be silent, and the right to be free from government-imposed self-censorship. Citizens suffer harm when they are forced to speak, regardless of what the government claims it will or will not do with that speech. *See, e.g.*, *City of Lakewood*, 486 U.S. at 757–59 (noting the problem with giving government officials unbridled discretion is that content-based censorship is that much more challenging to "detect[], review[], and correct[]").

*Finally,* Defendants rely on a Supreme Court order that administratively stayed a preliminary injunction to argue that there is no standing here. Opp. at 11. But that order contained no legal analysis whatsoever, let alone any findings about standing relevant to this case. *See Off. of Pers. Mgmt. v. AFGE*, 145 S. Ct. 1914 (2025). Moreover, the underlying district court order that was stayed concerned *organizational* standing of *nonprofit groups*—not labor unions—neither of which are at issue here. *Supra* n.1; *AFGE v. U.S. Off. of Pers. Mgmt.*, 770 F. Supp. 3d 1215, 1226–27 (N.D. Cal. 2025), *appeal dismissed*, 2025 WL 2976744 (9th Cir. Sept. 29, 2025). Notably, ten days after the administrative stay was issued, the district court *found associational standing* for the union plaintiffs (AFSCME and AFGE, also plaintiffs here), in a separate order that Defendants misleadingly failed to cite to this court. *See AFGE v. U.S. Off. of Pers. Mgmt.*, 781 F. Supp. 3d 920, 935–36 (N.D. Cal. 2025). Plaintiffs have established standing to bring claims on behalf of their members.

### B.    This Court Has Jurisdiction over Plaintiffs' Constitutional and APA Claims.

Defendants also urge this court to deny relief on jurisdiction/channeling grounds.  But Defendants' arguments rely on a mischaracterization of both the substance of Plaintiffs'

6

challenge and the applicable law. Plaintiffs are not challenging any individual personnel action and are not alleging a prohibited personnel practice, a grievance, or any other claim that falls within the scope of the Civil Service Reform Act ("CSRA") or the Federal Service Labor-Management Relations Statute. They are instead asserting constitutional and APA claims challenging OPM's government-wide policy of requiring agencies to impose the Loyalty Question. As Plaintiffs made clear in their Motion, these are the types of claims over which multiple courts in the last year—including the First Circuit—have held that district courts have jurisdiction. *See, e.g.*, *Somerville Pub. Sch. v. McMahon*, 139 F.4th 63, 72 (1st Cir. 2025) *administratively stayed sub. nom.*, *McMahon v. New York*, 125 S. Ct. 2643 (2025); *AFGE v. U.S. Off. of Pers. Mgmt.*, 771 F. Supp. 3d 1127 (N.D. Cal. 2025) (same); *AFGE v. Trump*, 784 F. Supp. 3d 1316 (N.D. Cal. May 22, 2025), *aff'd*, 2025 WL 1541714 (9th 2025); *Elev8 Baltimore, Inc. v. Corp. for Nat'l & Cmty. Serv.*, 2025 WL 1865971 (D. Md. July 7, 2025).

The Opposition does not address any of these decisions except one: *AFGE v. Trump*, 139 F.4th 1020 (9th Cir. 2025). There, the Ninth Circuit held that the district court ***had jurisdiction*** when two of the same plaintiffs here brought constitutional and APA challenges against another government-wide policy. Defendants argue that Plaintiffs' reliance on that case is "misplaced," Opp. at 19, but never explain why, and never attempt to distinguish this case from that one. Defendants accuse Plaintiffs of misreading the Supreme Court's stay of that injunction on substantive grounds to mean that the Supreme Court "likely decided" the district court had jurisdiction. *Id*. But Plaintiffs are not the ones who suggested that the Supreme Court's *AFGE* decision supports jurisdiction; the First Circuit is: "[I]n issuing its interim order in *AFGE*, the Supreme Court likely decided that the CSRA did ***not*** funnel the dispute at issue." *New York v. Kennedy*, 155 F.4th 67, 75 (1st Cir. 2025). The Ninth Circuit, the First Circuit, and the Supreme

7

Court are all in accord: federal employee unions may challenge government-wide policies like the MHP in district court.

The Opposition next argues that Plaintiffs are actually alleging either a "prohibited personnel practice" under Chapter 23 of the CSRA or a "grievance" under Chapter 71, Opp. at 17–18, 23, 24 n.3; and that, because Plaintiffs are federal employee unions, these supposed "prohibited personnel practices" or "grievances" are channeled to the Federal Labor Relations Authority ("FLRA"). That is wrong for multiple reasons. **First**, Plaintiffs are not alleging a prohibited personnel practice. A "prohibited personnel practice" must relate to some "personnel action," which may include an "appointment." 5 U.S.C. § 2302(a)(2)(A)(i). But Plaintiffs are not challenging an "appointment" or any other Chapter 23 "personnel action." Indeed, some of Plaintiffs' members whose speech is chilled have not even applied for federal jobs, much less experienced a federal personnel action. *See, e.g.*, Dkt. No. 48 ¶ 10. Plaintiffs instead are challenging a government-wide policy that infects virtually every civil service job posting with a First Amendment violation long before there could be any personnel action. Without a requisite personnel action, there is no basis to discern that Congress intended for Plaintiffs' claims to be channeled to the FLRA. *See, e.g, Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 369 (D.D.C. 2020); *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1434 (D.C. Cir. 1996); *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995).[3]

**Second**, Plaintiffs have not brought a "grievance" under 5 U.S.C. § 7103(a)(9)(B), as

---

[3] Defendants also cite *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009 (D.C. Cir. 2009) and *Fornaro v. James*, 416 F.3d 63 (D.C. Cir. 2005), for the proposition that if the CSRA itself does not provide relief for an employment action, a plaintiff cannot then challenge that action outside the CSRA. Opp. at 20. But Plaintiffs are not challenging an employment action, and they must have some avenue for vindicating their constitutional claims.

3894499

Defendants allege. Grievances "concern[] any matter relating to the employment of an employee," *id.*, namely individuals "employed by an agency" or "whose employment has ceased because of any unfair labor practice," *id.* § 7103(a)(2). Here, however, some of Plaintiffs' impacted members are only ***potential*** applicants for federal employment. And many of Plaintiffs' aggrieved members are not even current federal employees. Dkt. No. 47 ¶ 5. Nor do Plaintiffs' claims concern their members' employment. *See also U.S. DOJ Fed. Bureau of Prisons Fed. Med. Ctr.*, 70 F.L.R.A. 890, 892 (Sept. 28, 2018) (decision that a medical intern was not qualified to advance after his internship concluded was not a § 7103(a)(9)(B) grievance in part because it concerned actions that "would occur *after* the internship concluded"). Each of these points distinguishes this case from this court's opinion in *AFGE v. Ezell*, No. 25-cv-10276-GAO (Feb. 12, 2025), Dkt. No. 66 (slip op.), which related to the employment of only current federal employees. And they distinguish this case from *AFGE v. Trump*, 929 F.3d 748 (D.C. Cir. 2019), which related to "three executive orders regarding relations between the federal government *and its employees.*" *Id.* at 752. (emphasis added). Plaintiffs are not aware of a single case, and Defendants certainly cite none, in which a court has held that claims on behalf of applicants or potential applicants for employment, some of whom are not federal employees, are grievances that must be heard by the FLRA.

  ***Third***, channeling these First Amendment claims to the FLRA would deprive Plaintiffs of meaningful judicial review. Defendants argue that even though the FLRA may not be able to entertain Plaintiffs' First Amendment claims, an appellate court eventually can, and therefore there are no issues with sending Plaintiffs' claims to the FLRA. Opp. at 22–23. But this argument runs counter to the Supreme Court's teaching in *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023). Plaintiffs allege a First Amendment "here-and-now-injury," one that inflicts

9

irreparable harm on a daily basis and "is impossible to remedy once the [FLRA] proceeding is over." *Id.* at 191. As the Supreme Court made clear in *Axon*, channeling such claims would mean that judicial review comes "too late to be meaningful." *Id.* This too distinguishes this case from this court's opinion in *Ezell*, where Plaintiffs did not assert an irreparable First Amendment injury. Plaintiffs' claims here are clearly ones over which this court has jurisdiction.[4]

### C.    The MHP Is Final Agency Action.

As with the First Amendment claims, Defendants do not contest on the merits Plaintiffs' APA claims that the MHP is both arbitrary and capricious and also contrary to constitutional right. Instead, Defendants argue that the MHP is not "final agency action." But that is incorrect.

To begin, it is undisputed—Defendants literally do not dispute—that the MHP and MHP Guidance represent the consummation of *OPM's* decision-making on this issue, that the MHP directs federal agencies to implement the Loyalty Question, and that the inclusion of such a question compels and chills protected speech. The crux of Defendants' argument then is that, because other executive agencies must implement OPM's directive to include the Loyalty Question, the MHP and MHP Guidance are not "final," *i.e.*, they do not themselves determine the "rights or obligations" of or result in legal consequences to Plaintiffs. Opp. at 25.

That argument has been widely rejected. Courts take a "pragmatic" approach to finality. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016). Directives by OPM instructing other agencies how to implement presidential executive orders are final. For example,

---

[4] Defendants also misrepresent Plaintiffs' argument that the CSRA review scheme is no longer functioning as Congress intended. Defendants argue that the FLRA "can currently exercise all of its authorities as vacancies to (*sic*) not impair its operations," Opp. at 20–21, but Plaintiffs' argument is not about the generic functionality of the CSRA adjudicatory bodies; it is that Congress designed these bodies to be independent, and they now indisputably are not, undermining Congress' intent. Dkt. No. 40 at 32.

in *Doctors for America v. OPM*, Plaintiffs challenged an OPM directive to agencies that they remove materials from government websites that contravened a presidential executive order on gender ideology. In rejecting the government's claim that the OPM directive was not "final agency action," the district court explained that the directive was an exercise of agency power because it purported to implement an executive order and "prescrib[ed] a policy by providing agencies with new tasks and a new timeline on which to complete them." 793 F. Supp. 3d 112, 138 (D.D.C. 2025). Similarly in *New York v. Trump*, a court found that directives by OMB were agency action because they commanded "that Agency Defendants shall execute a categorical, indefinite funding freeze to align funding decisions with the President's priorities," that the agencies acted in short order to execute. 769 F. Supp. 3d 119, 136 (D.R.I. 2025); *see also Am. Public Health Ass'n v. Nat'l Insts. of Health*, 791 F. Supp. 3d 119, 176 (D. Mass. 2025) (holding that agency directives to terminate grants, in furtherance of presidential order to eradicate "diversity, equity, and inclusion," were final agency action).

The same is true here. The MHP and MHP Guidance direct that the Loyalty Question be included in applications, except in limited circumstances, and require that political appointees review those answers. Dkt. No. 1-4 at 2, 7–8. Subsequent guidance has further emphasized the mandatory inclusion of the Loyalty Question and the need for its consideration. Mot. at 7–8. In practice, the Loyalty Question has been included in more than 8,500 job postings (as of the date of this filing) as agencies follow the directives of the MHP and MHP Guidance. *Id.* at 22.

The MHP certainly has legal consequences that flow from it; as a direct result of OPM's directive, applicants are presented with the Loyalty Question and are compelled to speak on protected political issues or chilled from speaking altogether. The MHP is final agency action.

## II.    PLAINTIFFS FACE IRREPARABLE HARM ABSENT RELIEF.

Defendants' effort to avoid a Section 705 stay and a preliminary injunction, based on a supposed absence of irreparable harm, is contrary to Supreme Court precedent and common sense. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)); *see also Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012) (where there is concrete, ongoing constitutional injury, "[t]here is no need for an extensive analysis of [the irreparable harm] element of the preliminary injunction inquiry").

Defendants assert there is no irreparable harm because, supposedly, Plaintiffs unreasonably delayed in bringing this motion; and because, supposedly, Plaintiffs are challenging individual employment actions, which cannot serve as the basis for irreparable harm. Opp. at 26–28. Neither is true. Plaintiffs filed their complaint and motion for preliminary relief with speed and diligence. OPM issued the MHP on May 29, 2025, but the government did not start implementing its requirements until several months later. In June, July, and August, fewer than 10 percent of federal job postings included the Loyalty Question. *See* Dkt. No. 1-3, "'Merit Hiring Plan' Essay Tracker," https://usajobsloyaltytests.netlify.app/. As the Loyalty Question began appearing on a larger number of job postings this fall, Plaintiffs' members encountered it and began experiencing First Amendment harms. At that point, Plaintiffs moved expeditiously and diligently to protect their members' rights.

The two cases cited by Defendants, Opp. at 26, are inapposite. In *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004), plaintiffs "waited ***more than a year*** after the commencement of the action to seek an injunction" (emphasis added). In *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016), plaintiff waited "over five

months after filing its complaint" before moving for a preliminary injunction. Here, Plaintiffs

filed their preliminary injunction motion *two weeks* after their complaint—and even that minimal

delay was due to the then-ongoing government shutdown.

Defendants' second argument—that "Plaintiffs' alleged harm amounts to alleged loss of

employment or opportunities for employment," Opp. at 27—once again mischaracterizes

Plaintiffs' claims. This case is about speech, not employment actions. Plaintiffs' members

submitted declarations detailing the ways in which their protected speech was both compelled

and chilled by the Loyalty Question, *supra* Part I.A, and Plaintiffs' Motion thoroughly explained

why this is a First Amendment violation. *See* Mot. at 12–22. Defendants cannot elide the

irreparable harm they have caused by rewriting the Complaint.

## III.   THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR RELIEF.

The balance of equities and public interest also support relief. Defendants' only argument

is that they should have "discretion in administering its hiring and recruitment processes." Opp.

at 28. But in the 30 pages of their Opposition, they still have not identified a single government

interest served by the Loyalty Question. There is none.

## IV.   A SECTION 705 STAY AND PRELIMINARY INJUNCTION ARE REQUIRED.

In light of the ongoing constitutional injury to Plaintiffs' members and the unrebutted

evidence that the MHP is arbitrary and capricious, the Court should immediately stay the MHP

under Section 705 of the APA and enjoin the use of the Loyalty Question. Defendants'

Opposition primarily focuses on *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). Opp. at 29. But the

*CASA* decision does not preclude courts from setting aside or staying unlawful agency action

under the APA, nor do Defendants argue that it does. *See CASA*, 606 U.S. 831, 847 & n.10

(2025) (holding universal injunction generally "falls outside the bounds of a federal court's

authority under the Judiciary Act" but expressly not addressing scope of APA relief); *see also id.*

at 869, 873 (Kavanaugh, J. concurring) (noting that "in cases under the Administrative Procedure Act, plaintiffs may ask a court to preliminarily 'set aside' a new agency rule" and courts may still enter "the functional equivalent of a universal injunction" under the APA). Numerous courts considering the issue post-*CASA* have reached the same conclusion. *See, e.g., Ass'n of Am. Univs. v. Dep't of Def.*, 792 F. Supp. 3d 143, 182 (D. Mass. 2025) ("[T]he Court does not necessarily agree that a stay under the APA is subject to the same limitations espoused in CASA.").[5] This court should exercise its authority under 5 U.S.C. § 705 and stay the MHP and MHP Guidance.

Nor does *CASA* preclude Rule 65 preliminary injunctive relief that is necessary to afford Plaintiffs and their members "complete relief." *See Chicago Women in Trades v. Trump*, 2025 WL 3034056, at *6 (N.D. Ill. Oct. 30, 2025) (enjoining enforcement of challenged provision to achieve "complete relief" under the "necessities of the case"); *see also CASA*, 606 U.S. at 851; *Ass'n of Am. Univs.*, 792 F. Supp. 3d at 182. As the First Circuit recently noted, "[n]othing in CASA provides that, as a categorical matter, it is improper for a district court to impose an injunction of such breadth if it is necessary to do so to provide the plaintiff with complete relief." *Doe v. Trump*, 157 F.4th 36, 80–81 (1st Cir. 2025). As explained by Plaintiffs in their Motion, Mot. at 34–35, there is no practical way to afford "complete relief" to Plaintiffs and their members without prohibiting use of the Loyalty Question until this case is resolved.

---

[5] *See also Make the Road N.Y. v. Noem*, 2025 U.S. App. LEXIS 31160, at *97 (D.C. Cir. Nov. 22, 2025) ("CASA does not control the scope of relief available under Section 705."); *City of Chicago v. U.S. Dep't of Homeland Sec.*, 2025 WL 3171302, at *2 (N.D. Ill. Nov. 13, 2025) ("Nearly all, if not all, courts that have considered the issue since CASA have similarly held that vacatur remains an available remedy for APA claims.") (collecting cases); *City of Columbus v. Kennedy*, __ F. Supp. 3d __, 2025 WL 2426382, at *34 (D. Md. Aug. 22, 2025) ("[T]he Court finds, in line with other recent cases addressing the issue, that the limiting principle on universal or national injunctions announced in CASA does not apply to APA cases.") (collecting cases).

Defendants ignore the "complete relief" standard entirely. Defendants acknowledge that where a plaintiff entity has "properly established associational standing," it may obtain relief that benefits its nonparty members. Opp. at 29.[6] Yet Defendants seek to impose, as a prerequisite to such relief, that Plaintiffs disclose their membership rolls. That would force Plaintiffs to compromise their members' First Amendment rights against having their membership in the union publicly revealed, *see NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 466 (1958), in order to vindicate those same members' First Amendment rights with respect to the Loyalty Question. Moreover, while the identified members would not be forced to respond to the Loyalty Question when applying for federal jobs, singling them out and directing them to a separate application queue would risk stigmatizing their application and subjecting it to the same potential viewpoint discrimination as those who choose not to answer the Loyalty Question in the first instance. Such a cramped and conditional remedy is no remedy at all, and certainly not one that affords complete relief between the parties. *See Doe*, 157 F.4th at 82 (affirming universal injunction because government's proposed injunction would impose "material [and] administrative . . . burdens" on plaintiffs).

The Court should enter a section 705 stay and the proposed injunction.

---

[6] Defendants' complaint that Plaintiffs relied on pseudonymous declarations to establish standing, Opp. at 29, is unavailing. Defendants did not oppose Plaintiffs' motion to file pseudonymous declarations, Dkt. No. 33, and courts, including the First Circuit, have recognized that such declarations are sufficient to meet the requirement that Plaintiffs "identify members who have suffered the requisite harm" under *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). *See N.H. Indonesian Cmty. Support v. Trump*, 157 F.4th 29, 33, 35 (1st Cir. 2025).

DATED: December 10, 2025       By:   */s/ Warren a. Braunig*
          Warren A. Braunig (*Admitted Pro Hac Vice*)
          Sara Fitzpatrick (*Admitted Pro Hac Vice*)
          Charlotte J. Kamai (*Admitted Pro Hac Vice*)
          Cara R. Meyer (*Admitted Pro Hac Vice*)
          KEKER, VAN NEST & PETERS LLP
          633 Battery Street
          San Francisco, CA 94111-1809
          Telephone: (415) 391 5400
          wbraunig@keker.com
          sfitzpatrick@keker.com
          ckamai@keker.com
          cmeyer@keker.com
          *Counsel for Plaintiffs*

          Tsuki Hoshijima (BBO # 693765)
          Elena Goldstein (*Admitted Pro Hac Vice*)
          Webb Lyons** (*Admitted Pro Hac Vice*)
          DEMOCRACY FORWARD FOUNDATION
          P.O. Box 34553
          Washington, D.C. 20043
          Telephone: (202) 991 0159
          thoshijima@democracyforward.org
          egoldstein@democracyforward.org
          wlyons@c.democracyforward.org**
          ***Of Counsel*
          *Counsel for Plaintiffs*

          Ori Lev (*Admitted Pro Hac Vice*)
          Jacek Pruski (*Admitted Pro Hac Vice*)
          PROTECT DEMOCRACY PROJECT
          2020 Pennsylvania Avenue NW Suite #163
          Washington, D.C. 20006
          Telephone: (202) 579-4582
          ori.lev@protectdemocracy.org
          jacek.pruski@protectdemocracy.org
          *Counsel for Plaintiffs*

Rushab B. Sanghvi (*Admitted Pro Hac Vice*)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street, NW
Washington, DC 20001
Telephone: (202) 639-6426
SanghR@afge.org
*Counsel for Plaintiff American Federation of
Government Employees, AFL-CIO (AFGE)*

Matthew S. Blumin (*Admitted Pro Hac Vice*)
AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
AFL-CIO
1625 L Street NW
Washington DC, 20036
Telephone: (202) 775-5900
mblumin@afscme.org
*Counsel for Plaintiff American Federation State,
County, and Municipal Employees, AFL-CIO
(AFSCME)*

Sarah Suszczyk (*Admitted Pro Hac Vice*)
NATIONAL ASSOCIATION OF GOVERNMENT
EMPLOYEES, INC.
159 Burgin Parkway
Quincy, MA 01269
Facsimile:(617) 376-0285
Ssuszczyk@nage.org
*Counsel for Plaintiff National Association of
Government Employees, Inc. (NAGE)*

17

**<u>CERTIFICATE OF SERVICE</u>**

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail.

*/s/ Warren A. Braunig*
WARREN A. BRAUNIG

18

3894499