# EXHIBIT A

No.

# In the United States Court of Appeals For the First Circuit

*IN RE AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, AND NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC.,*

*Petitioners.*

*Petition for Writ of Mandamus to the United States District Court, District of Massachusetts*
*(No. 1:25-cv-13305-GAO)*

## PETITION FOR WRIT OF MANDAMUS

KEKER, VAN NEST & PETERS LLP
WARREN A. BRAUNIG
SARA FITZPATRICK
CHARLOTTE J. KAMAI
SANA A. SINGH
633 Battery Street
San Francisco, California 94111
Telephone: 415 391 5400
Facsimile: 415 397 7188

DEMOCRACY FORWARD FOUNDATION
ELENA GOLDSTEIN
WEBB LYONS**
TSUKI HOSHIJIMA
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090
Facsimile: (202) 796-4426
***OF COUNSEL*

*Counsel for Petitioners*
*[Additional Counsel on following page]*

PROTECT DEMOCRACY
PROJECT
ORI LEV
2020 Pennsylvania Avenue NW
Suite #163
Washington, D.C. 20006
Telephone: (202) 579-4582

*Counsel for Petitioners*

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
AFL-CIO
RUSHAB B. SANGHVI
80 F Street, NW
Washington, DC 20001
Telephone: (202) 639-6426

*Counsel for Petitioner American
Federation of Government
Employees, AFL-CIO (AFGE)*

AMERICAN FEDERATION OF
STATE, COUNTY AND
MUNICIPAL EMPLOYEES,
AFL-CIO
MATTHEW S. BLUMIN
1625 L Street NW
Washington DC, 20036
Telephone: (202) 775-5900

*Counsel for Petitioner American
Federation State, County, and
Municipal Employees, AFL-CIO
(AFSCME)*

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................ 1

JURISDICTIONAL STATEMENT ........................................................ 2

RELIEF SOUGHT BY THE PETITIONERS ......................................... 2

ISSUES PRESENTED IN THE PETITION ............................................ 2

INTRODUCTION ................................................................................ 3

STATEMENT OF FACTS ...................................................................... 5

REASONS WHY THE WRIT SHOULD ISSUE ..................................... 11

    I.     The district court has a clear and indisputable duty to rule promptly on the Motion, but it has not done so. ................. 13

    II.    Absent a writ, the Unions are without redress, and the Unions' members are suffering irreparable harm due to the district court's delay. ............................................................. 16

    III.    The balance of equities weighs in favor of issuance of a writ of mandamus. ...................................................................... 20

CONCLUSION ................................................................................... 22

CERTIFICATE OF COMPLIANCE ..................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of Mich. v. Livingston Cnty.*,
  796 F.3d 636 (6th Cir. 2015)...............................................................20

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963).............................................................................18

*Bufkin v. Collins*,
  604 U.S. 369 (2025)...........................................................................13

*In re Bulger*,
  710 F.3d 42 (1st Cir. 2013) ...............................................................12

*In re Cargill, Inc.*,
  66 F.3d 1256 (1st Cir. 1995) ...............................................................2

*Dorce v. Wolfe*,
  506 F. Supp. 3d 142 (D. Mass. 2020)................................................20

*Elrod v. Burns*,
  427 U.S. 347 (1976)......................................................................3, 17

*Free the Nipple-Fort Collins v. City of Fort Collins, Co.*,
  916 F.3d 792 (10th Cir. 2019)...........................................................20

*In re Google Inc.*,
  No. 2015-138, 2015 WL 5294800 (Fed. Cir. July 16, 2015) ..............11

*Harris as next friend of RNH v. Adams*,
  757 F. Supp. 3d 111 (D. Mass. 2024)................................................13

*Harris v. Quinn*,
  573 U.S. 616 (2014)...........................................................................18

*In re Hicks*,
118 F. App'x 778 (4th Cir. 2005)..................................................... 15, 16

*In re Hood*,
135 F. App'x 709 (4th Cir. 2005)..................................................... 15, 17

*Insurance Co. v. Comstock*,
16 Wall. 258, 21 L.Ed. 493 (1873) ....................................................... 11

*Johnson v. Rogers*,
917 F.2d 1283 (10th Cir. 1990)....................................... 14, 15, 16, 17

*Lakewood v. Plain Dealer Publ'g Co.*,
486 US 750 (1988)................................................................................ 18

*Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*,
779 F. Supp. 3d 149 (D.N.H. 2025)...................................................... 21

*Post v. Gilmore*,
111 F.3d 556 (7th Cir. 1997)........................................................ 13, 21

*Roche v. Evaporated Milk Ass'n*,
319 U.S. 21 (1943)......................................................................... 11, 17

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
592 U.S. 14 (2020)........................................................................... 3, 17

*Rutan v. Republican Party of Ill.*,
497 U.S. 62 (1990)............................................................................... 18

*Siembra Finca Carmen, LLC v. Sec'y of Dep't of Agric. Of
P.R.*,
437 F. Supp. 3d 119 (D.P.R. 2020)...................................................... 21

*In re Strickland*,
87 F.4th 257 (4th Cir. 2023) .............................................................. 13

*In re United States
ex rel. Drummond,* 886 F.3d 448 (5th Cir. 2018) ......................... 15, 16

*United States v. Carpenter,*
  781 F.3d 599 (1st Cir. 2015) ............................................................... 14

*Will v. Calvert Fire Ins. Co.,*
  437 U.S. 655 (1978) .............................................................. 11, 16, 17

*Petition of Zeno,*
  14 F.2d 418 (1st Cir. 1926) ............................................................ 12

**Statutes**

5 U.S.C. § 705 ............................................................................ 4, 8, 22

28 U.S.C. § 1651 ................................................................................ 2

28 U.S.C. § 1657 ....................................................................... *passim*

28 U.S.C. § 1657(a) ............................................................. 12, 13, 15, 16

**Rules**

Fed. R. App. P. 21(a) ........................................................................... 2

Fed. R. App. P. 26.1 ........................................................................... 1

Fed. R. Civ. P. 40 ...................................................................... 2, 13, 16

**Constitutional Provisions**

U.S. Const. amend. I ................................................................ *passim*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, each petitioner that is a nongovernmental corporation hereby identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock or states there is no such corporation.

1.    American Federation of Government Employees, AFL-CIO has no parent corporation and has no stock or stockholders, so no publicly held corporation owns 10% or more of its stock.

2.    American Federation of State, County and Municipal Employees, AFL-CIO has no parent corporation and has no stock or stockholders, so no publicly held corporation owns more than 10% of its stock.

3.    National Association of Government Employees, Inc. has no parent corporation and has no stock or stockholders, so no publicly held corporation owns 10% or more of its stock.

1

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this petition for a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651. *See also In re Cargill, Inc.*, 66 F.3d 1256, 1259 (1st Cir. 1995) ("Federal appellate courts are empowered to issue prerogative writs that are 'necessary or appropriate in aid of their respective jurisdictions' under the All Writs Act . . . . Mandamus is such a writ.").

## RELIEF SOUGHT BY THE PETITIONERS

Petitioners, who are plaintiffs in a case challenging the use of an unconstitutional loyalty question in federal hiring, *American Federation of Government Employees, AFL-CIO, et al. v. Scott Kupor, et al.*, No. 1:25-cv-13305-GAO, hereby petition, pursuant to 28 U.S.C. § 1651 and Rule 21(a) of the Federal Rules of Appellate Procedure, for a writ of mandamus directing the Honorable George A. O'Toole Jr. to promptly issue a decision on Petitioners' motion for preliminary injunctive relief as required by 28 U.S.C. § 1657 and Federal Rule of Civil Procedure 40.

## ISSUES PRESENTED IN THE PETITION

Whether a writ of mandamus should issue where the district court has failed to timely adjudicate a motion for preliminary injunctive

2

relief, as required by 28 U.S.C. § 1657, that has been pending and fully briefed for over six months.

## INTRODUCTION

The Supreme Court has made clear that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Petitioners have established that their members' First Amendment rights are being violated not just for a minimal period of time, but every single day, in a way that is both recurring and escalating. Yet, seven months after Petitioners first asked the district court to preliminarily enjoin this irreparable injury, the district court has failed to do so. In fact, the district court has failed to act *at all*, leaving Petitioners in the impossible and untenable position of experiencing daily constitutional harm with no means of redressing it.

Petitioners are three unions (collectively, the "Unions") that represent over 1.8 million members, including hundreds of thousands of federal employees and many others who are interested in working for the federal government in nonpartisan, merit-based civil service jobs.

3

Last year, however, the U.S. Office of Personnel Management ("OPM") politicized the hiring process for those civil service jobs. It issued a so-called Merit Hiring Plan, which directs that postings for federal jobs include an essay question—the Loyalty Question—that prompts candidates to express and detail their personal support for President Trump and his policies.

In November 2025, the Unions filed suit and moved for a preliminary injunction and a stay pursuant to 5 U.S.C. § 705 because the Merit Hiring Plan violates both the First Amendment and the Administrative Procedure Act. In support of their motion, the Unions submitted declarations from individual members who detailed the ways in which the Loyalty Question both compelled and chilled their speech, in clear violation of their First Amendment rights. Now, seven months later—and over six months since the Unions' motion has been fully briefed—the harm has only escalated: the number of postings for federal jobs that include the Loyalty Question has grown from 6,500 to almost 50,000. Each time the Unions' members encounter the Loyalty Question, they suffer constitutional injury anew.

4

The Unions are entitled to have their request for preliminary relief adjudicated. Because the district court has failed to do so, the Unions respectfully ask this Court to issue a writ and order the district court to act consistent with its obligations under 28 U.S.C. § 1657. Absent such a writ, the Unions' members will continue to suffer ongoing, irreparable harm.

## STATEMENT OF FACTS

For more than a century, Congress has repeatedly passed legislation to promote a merit-based federal civil service unfettered by partisanship and political affiliations. As a result, the civil service has been able to recruit highly qualified individuals eager to offer their expertise and dedicated service to the Nation, regardless of the party in control of the Executive branch. Federal civil servants pledge loyalty to the Constitution—not any particular president or political party.

But that system is under serious threat. In May 2025, the Trump Administration took another dangerous step towards dismantling it. On May 29, 2025, the White House and the Office of Personnel Management ("OPM") issued the so-called "Merit Hiring Plan" ("MHP"). The MHP directs that "all Federal job vacancy announcements graded

5

at GS-05 or above will include four short, free-response essay questions." A078. The third question, the "Loyalty Question," asks:

> How would you help advance the President's Executive Orders and policy priorities in this role? Identify one or two relevant Executive Orders or policy initiatives that are significant to you, and explain how you would help implement them if hired.

A079. The MHP also requires that agency leadership—*i.e.*, political appointees—be involved throughout the full hiring process, including reviewing essay responses to the Loyalty Question and approving hiring decisions. A071, 077–78. The Loyalty Question serves to assess job applicants not on their ability, but on their professed enthusiasm for President Trump's policies.

Subsequent OPM guidance has only compounded the problems with the Loyalty Question. On June 23, 2025, OPM issued guidance stating that job applicants should be told that "we encourage you to thoughtfully address each question," and that answers will be reviewed "by the hiring manager and agency leadership (or a designee), as part of an application packet forwarded to the manager and later to agency leadership." A102, A192. In September, OPM instructed federal agencies that the Loyalty Question "must be used on *all competitive*

*service job opportunity announcements* [with limited exceptions]," and that "agencies *should immediately* . . . [u]se the four short essay questions." A186, 191 (emphases added). In October, the President issued an executive order directing that each federal agency must establish a Strategic Hiring Committee, which must include high-level senior political appointees, to approve the filling of job vacancies. A197. Later that month, OPM issued guidance instructing high-level political appointees that they "must ensure that agency hiring is consistent with . . . administrative priorities" and should not defer to the recommendations of others in approving new hires. A198. The message to applicants is clear: if an applicant does not answer the Loyalty Question, or does not answer in a way that demonstrates sufficient allegiance to the Trump Administration, political appointees will review that response (or non-response) as part of the hiring decision.

Petitioners American Federation of Government Employees, AFL-CIO ("AFGE"), American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME"), and National Association of Government Employees, Inc. ("NAGE") (collectively, the "Unions") represent over 1.8 million members, including hundreds of thousands of

7

federal civil servants, as well as applicants and prospective applicants for civil service jobs. The Unions' members include individuals who are interested in positions within the federal civil service. Some of the Unions' members,  including four who submitted detailed declarations, reasonably fear that their job applications will be disadvantaged or deemed incomplete if they refuse to answer the Loyalty Question, and they have either been compelled to express political opinions they do not wish to, or have been deterred from answering the Loyalty Question or applying to jobs they would otherwise be interested in. A646–63.

In November 2025, the Unions filed suit on behalf of their members, challenging the Loyalty Question under the First Amendment and the Administrative Procedure Act. A015. On November 19, 2025, the Unions filed a motion for a stay under 5 U.S.C. § 705 and for a preliminary injunction ("Motion"). A201, 207. The Government opposed. A664. On December 10, 2025, the Unions requested leave to file a Reply and attached the proposed Reply brief to

the motion. A701. The district court granted the motion for leave;[1] accordingly, the Motion was fully briefed on December 10.

When the district court had not ruled on the Motion or set a hearing more than a month after it was fully briefed, on January 14, 2026, the Unions requested a hearing on the Motion and a status conference to address the Government's failure to timely answer the Complaint. A725. The court set a hearing for February 25, 2026. A730. At the Government's request, the court continued the hearing to March 11. A013. On March 11, the parties appeared and argued the Motion.

Three months after the hearing—and over six months since the Motion was fully briefed—the district court has yet to issue a decision and has given no indication that a decision is forthcoming.[2]

---

[1] The district court granted the motion for leave on January 6, 2026. A012.

[2] The district court has continued to issue orders in other cases. *See, e.g.*, *Moskow v. Wheeler*, No. 24-CV-10474-GAO, 2026 WL 622354, at *1 (D. Mass. Mar. 5, 2026) (order adjudicating motion to withdraw and for attorneys' fees); Order, *Pereira Da Silva v. Moniz et al.*, No. 26-CV-10446-GAO (D. Mass. May 4, 2026, Dkt. No. 16 (denying petition for writ of habeas corpus); Order, *Qualls v. Roache et al.*, No. 23-CV-10435-GAO (D. Mass Mar. 31, 2026), Dkt. No. 68 (granting motion for summary judgment).

Meanwhile, the Government's implementation of the Loyalty Question has escalated. When the Unions filed their Complaint, the Loyalty Question had appeared on over 5,800 job postings on USAjobs.gov, the website operated by OPM that serves as "the federal government's official employment site." A044. By the time briefing was completed on the Motion, approximately 8,500 jobs had been posted with the Loyalty Question. A717. On April 27, 2026, the Unions informed the court that they had learned, contrary to the Government's representations, that applicants could not skip answering the Loyalty Question on USAJobs postings. A782–84. In the same notice, the Unions apprised the court that the Loyalty Question had appeared on over 33,000 job postings. A784.

Based on that new factual information, in their April 27 filing the Unions again sought "[i]mmediate relief," A779, but have heard nothing from the court.

Today, the number of job postings with the Loyalty Question has increased to over 46,000. *See* "'Merit Hiring Plan' Essay Tracker," https://usajobsloyaltytests.netlify.app/ (last visited June 15, 2026) (documenting the number of federal job vacancy postings that include

the Loyalty Question). Every day that the MHP is not stayed or enjoined, the Unions' members who are interested in federal jobs face the dilemma of how to respond to this plainly unconstitutional Loyalty Question—by speaking favorably about the current Administration's policies regardless of the individuals' own personal convictions; by speaking on political matters (when they would prefer not to speak); by remaining silent when they would prefer to offer their sincerely held views but feel they cannot; or by declining to apply to jobs that include the offending question. In other words, every day, the Unions' members endure irreparable First Amendment injury.

### REASONS WHY THE WRIT SHOULD ISSUE

A writ of mandamus is properly granted to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise authority when it is its duty to do so." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661 (1978) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)). "There can be no doubt that, where a district court persistently and without reason refuses to adjudicate a case properly before it, the court of appeals may issue the writ 'in order that [it] may exercise the jurisdiction of review given by law.'" *Id.* (quoting

11

*Insurance Co. v. Comstock*, 16 Wall. 258, 270, 21 L.Ed. 493 (1873)). As relevant here, "a lengthy delay in ruling on a request for relief can amount to a denial of the right to have that request meaningfully considered." *In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at *1 (Fed. Cir. July 16, 2015) (granting mandamus).

Mandamus relief is appropriate where the petitioner shows a "clear and indisputable" right to relief; there is "no other adequate source of relief," such that the petitioner will suffer irreparable harm absent a writ; and "on balance, the equities favor issuance of the writ." *In re Bulger*, 710 F.3d 42, 45 (1st Cir. 2013). Each factor is met here. The district court has a clear and indisputable duty, pursuant to 28 U.S.C. § 1657, to expedite consideration of motions for preliminary injunctive relief. There is no alternative avenue for relief, and absent a writ, the Unions will suffer irreparable harm. *See Petition of Zeno*, 14 F.2d 418, 423 (1st Cir. 1926) (holding that the petitioner would be without redress absent a writ directing the trial court to exercise jurisdiction). And the balance of equities clearly weighs in favor of granting the writ: the Government has posted an average of over one

12

hundred new federal jobs each day that include the Loyalty Question, each of which poses a new constitutional violation for job applicants.

## I.    The district court has a clear and indisputable duty to rule promptly on the Motion, but it has not done so.

Federal courts have a duty to "expedite the consideration" of motions for "temporary or preliminary injunctive relief." 28 U.S.C. § 1657(a). Section 1657(a) provides that "each court of the United States shall determine the order in which civil actions are heard and determined, except that the court ***shall*** expedite the consideration of any action brought under chapter 153 or section 1826 of this title, ***any action for temporary or preliminary injunctive relief***, or any other action if good cause therefor is shown." *Id.* (emphasis added). This requirement uses mandatory language and is therefore not discretionary. *See Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("It is undisputed that the word 'shall' imposes a mandatory command." (citation omitted)); *see Post v. Gilmore*, 111 F.3d 556, 557 (7th Cir. 1997) (Section 1657 requires certain requests to "go to the head of the queue").

The expedition required by Section 1657(a) is further reinforced by Federal Rule of Civil Procedure 40, which requires that courts "must give priority to actions entitled to priority by a federal statute." *In re*

*Strickland*, 87 F.4th 257, 261 (4th Cir. 2023) ("To be sure, § 1657(a) requires the district court in this case to 'expedite the consideration of' Strickland's PI motion, and Rule 40 similarly requires the district court to 'give priority' to that motion."). This requirement exists because "[t]he urgency of obtaining a preliminary injunction necessitates a prompt determination." *Harris as next friend of RNH v. Adams*, 757 F. Supp. 3d 111, 120 n.4 (D. Mass. 2024). To unduly delay adjudicating a motion for preliminary relief is tantamount to denying the motion, except that there is no possibility of appeal. *See Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990) (relief is "reduced to a sham if the trial courts do not act within a reasonable time").

A writ of mandamus is appropriate in this case. This Court has suggested that "mandamus could be used to compel a district court to hasten a ruling under certain rare circumstances." *United States v. Carpenter*, 781 F.3d 599, 616 (1st Cir. 2015) (rejecting criminal defendant's argument that post-conviction delay should result in dismissal but noting that the delay may give rise to mandamus relief). This is one such circumstance. The district court here has failed to adjudicate a fully-briefed motion seeking a preliminary injunction for

14

over six months, subjecting the Unions' members to ongoing and repeated constitutional violations, with no opportunity to remedy those violations. The Unions reiterated their request for "[i]mmediate relief" when additional facts supporting relief became available after the motion hearing, but the district court has not acted.

Other circuits have consistently held that mandamus relief is available where a district court unreasonably delays adjudicating a matter before it. *See, e.g.*, *In re United States ex rel. Drummond*, 886 F.3d 448, 450 (5th Cir. 2018) ("The district court's delay in adjudicating this case is simply inexcusable, and this Court is left with no other option but to grant mandamus relief."); *In re Hood*, 135 F. App'x 709, 710 (4th Cir. 2005) (determining that seven month delay in issuing final judgment warranted writ of mandamus); *Johnson*, 917 F.2d at 1285 (granting mandamus after fourteen month delay in adjudicating habeas petition).

In *In re Hicks*, 118 F. App'x 778 (4th Cir. 2005), for example, the Fourth Circuit issued a writ of mandamus ordering a trial court to promptly adjudicate a habeas corpus case because, "[p]ursuant to 28 U.S.C. § 1657(a) (2000), the district court must give priority to habeas

corpus cases over other civil cases." Though *Hicks* was a habeas case,

Section 1657(a) does not distinguish between habeas cases and actions

for preliminary injunctive relief; it directs courts to "expedite the

consideration" of both. 28 U.S.C. § 1657(a).

The district court has unreasonably delayed a decision on the

Unions' Motion seeking preliminary injunctive relief, undermining the

pragmatic justification for 28 U.S.C. § 1657(a) and Federal Rule of Civil

Procedure 40. The result is that the Unions are deprived not only of the

preliminary relief they seek, but also of the opportunity to appeal that

*de facto* denial. Accordingly, mandamus should issue to "compel [the

district court] to exercise its authority when it is its duty to do so."

*Calvert*, 437 U.S. at 661 (citation omitted).

## II. Absent a writ, the Unions are without redress, and the Unions' members are suffering irreparable harm due to the district court's delay.

The Unions have no alternative but to seek a writ in this

circumstance. As numerous courts have confirmed, a writ of mandamus

is the only redress for a district court's failure to timely exercise its

authority; there is "no alternative remedy." *Johnson*, 917 F.2d at 1285;

*see also In re United States ex rel. Drummond*, 886 F.3d at 450

16

(concluding that the appellate court "is left with no option but to grant mandamus relief" where the district court unduly delays its decision); *In re Hicks*, 118 F. App'x 778 ("[N]o other adequate remedy is available."). The very nature of a refusal to adjudicate is that there is no decision from which to appeal. *In re Hood*, 135 F. App'x at 711 (holding petitioner "has no other adequate means to attain the relief she seeks" where "the district judge has not entered an order.") When a court "refuses to adjudicate a case properly before it," mandamus may be issued because "[o]therwise the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal." *Calvert*, 437 U.S. at 662 (quoting *Roche*, 319 U.S. at 25). As the Tenth Circuit explained, in such cases, "justice delayed is justice denied." *Johnson*, 917 F.2d at 1285.

The Unions and their members are suffering irreparable harm due to the district court's delay. It is well established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese*, 592 U.S. at 19 (2020) (quoting *Elrod*, 427 U.S. at 373). The

17

Government's use of the Loyalty Question in federal civil service hiring violates the First Amendment in four distinct ways. *First*, it conditions federal employment on political patronage, in violation of binding precedent holding that the government may not "condition[] hiring decisions on political belief . . . unless the government has a vital interest in doing so." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 78 (1990). *Second*, the Loyalty Question constitutes unlawful viewpoint discrimination because it prompts job applicants to speak on a political topic—the policies and executive orders of the current President—and gives politically-appointed agency leaders unbridled discretion to use the answers in hiring decisions. *See Lakewood v. Plain Dealer Publ'g Co.*, 486 US 750, 757-59 (1988) (striking down ordinance giving mayor unfettered discretion to grant or deny licenses for setting up news racks on the basis it enabled content discrimination). *Third*, the use of the Loyalty Question unconstitutionally ***compels speech*** by directing job applicants to profess their views of the President's policies. *See Harris v. Quinn*, 573 U.S. 616, 647 (2014) ("The government may not . . . compel the endorsement of ideas that it approves."). *Fourth*, the Loyalty Question also ***chills speech*** because applicants and potential

18

applicants who disapprove of President Trump's policies reasonably understand that if they were to answer this charged political question honestly, their applications—and, for current federal employees, their jobs—would be at risk. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (holding "informal censorship," threats, "and other means of coercion, persuasion, and intimidation" have the potential to chill political speech).[3] Each time the Government includes the Loyalty Question in a job posting, it violates the First Amendment anew.

The harm caused by the district court's unreasonable delay is worsening, because the Government has rapidly accelerated its use of the Loyalty Question since the Unions filed the Motion. When the Unions filed their Motion, they explained that the Government was posting "hundreds of new job applications that contain the Loyalty

---

[3] The Unions spell out the constitutional violations in greater detail in their PI Motion. A226–36. Notably, the Government did not contest whether the MHP violates the First Amendment, instead basing its Opposition primarily upon purported standing and jurisdictional deficiencies. A664–700. But as the Unions explained, they plainly have associational standing to assert claims on behalf of their members, and the types of claims at issue—constitutional and APA claims challenging a government-wide policy, not labor relations clams or claims challenging individual personnel actions—are ones over which the district court clearly has jurisdiction. A708–16.

19

Question each week." A241. It is now posting hundreds of jobs with the Loyalty Question *each day*.[4] *See* "'Merit Hiring Plan' Essay Tracker," https://usajobsloyaltytests.netlify.app/ (last visited June 15, 2026). Until the MHP is stayed and the Government's use of the Loyalty Question is enjoined, new constitutional injuries will continue to multiply.

## III.   The balance of equities weighs in favor of issuance of a writ of mandamus.

The balance of equities favors the Unions' request for a writ. As described in Section II, *supra*, without a decision, the Unions' Motion has been *de facto* denied, without any opportunity for appeal. As a result, the Unions' members are being harmed by the Government's escalating use of an unconstitutional political loyalty question in federal civil service hiring. The Unions have a substantial interest in having this matter adjudicated. And as many sister circuits have explained, it is "always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple-Fort Collins v. City of Fort*

---

[4] For example, sorted by date opened, the 'Merit Hiring Plan' Essay Tracker captured 305 job postings with the Loyalty Question issued on June 2, 2026, and 342 issued on June 3, 2026. "'Merit Hiring Plan' Essay Tracker," https://usajobsloyaltytests.netlify.app/ (last visited June 15, 2026).

*Collins, Co.*, 916 F.3d 792, 807 (10th Cir. 2019); *ACLU of Mich. v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015); *see also Dorce v. Wolfe*, 506 F. Supp. 3d 142, 145 (D. Mass. 2020).

There is no countervailing interest. The Government has never articulated *any* purpose, much less a legitimate one, for its use of the Loyalty Question. *See generally* A664–700 (government opposition to preliminary relief); A707–08. The "government has no interest in enforcing an unconstitutional law, [and] the public interest is harmed by the enforcement of laws repugnant to the United States Constitution." *Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, 779 F. Supp. 3d 149, 201 (D.N.H. 2025) (quoting *Siembra Finca Carmen, LLC v. Sec'y of Dep't of Agric. Of P.R.*, 437 F. Supp. 3d 119, 137 (D.P.R. 2020)). And while courts generally have discretion to manage their dockets, they do not have discretion to ignore Section 1657's mandatory instruction that certain requests, including motions for preliminary injunctions, "go to the head of the queue." *Post*, 111 F.3d at 557 (describing requirement in mandamus context). The Unions have already waited more than six months for a decision on their request for preliminary relief. They should not be required to wait indefinitely.

21

## CONCLUSION

For the foregoing reasons, the Unions respectfully request that the Court issue a writ of mandamus directing the Honorable George A. O'Toole Jr. to issue a decision on the Unions' Motion for preliminary injunction and a § 705 stay within 30 days.

Respectfully submitted,

June 15, 2026                    By:   /s/ Warren A. Braunig
                                      Warren A. Braunig
                                      Sara Fitzpatrick
                                      Charlotte J. Kamai
                                      Sana A. Singh
                                      KEKER, VAN NEST & PETERS
                                      LLP

                                      *Attorneys for Petitioner American Federation of Government Employees, AFL-CIO, American Federation of State, County and Municipal Employees, AFL-CIO, and National Association of Government Employees*

22

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 21(d)(1), this brief contains 3,977 words, excluding the items exempted by Rule 32(f). The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6). I certify that this brief complies with the word limit of Federal Rule 21(d)(1).

/s/ Warren A. Braunig
WARREN A. BRAUNIG

23

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate ACMS system.

Pursuant to Federal Rule of Appellate Procedure 21(a)(1), I certify that this petition is being served concurrently on all parties to the proceeding in the trial court, and that a copy is being provided to the trial court judge.

*/s/ Warren A. Braunig*
WARREN A. BRAUNIG